**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **KELVIN RADLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:12-cv-403** |
| | ) | |
| **DAVIDSON COUNTY SHERIFF'S OFFICE, _et al._,** | ) | **Judge Campbell** |
| | ) | **Magistrate Judge Joe Brown** |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff Kelvin Radley, a prisoner presently incarcerated at Metro-Davidson County Detention Facility, filed this _pro se_ civil rights action under 42 U.S.C. § 1983 based on alleged violations of his constitutional rights that occurred while he was housed at the Davidson County Sheriff's Office Criminal Justice Center ("CJC"). He proceeds _in forma pauperis._ His complaint is before the Court for an initial review pursuant to 28 U.S.C. § 1915 and _McGore v. Wrigglesworth_, 114 F.3d 601 (6th Cir. 1997), _reversed on other grounds by Jones v. Bock_, 549 U.S. 199 (2007).

The complaint names the following individuals and entities as defendants: (1) the Davidson County Sheriff's Office ("DCSO"); (2) Sheriff Daron Hall, in his official and individual capacity; (3) Warden Dan Weikal, in his official and individual capacity; (4) Chief of Staff Jamie Johnson in his official and individual capacity; (5) the Medical Department of the Davidson County Sheriff's Department; (6) Corrections Officer Michael Graulau in his individual and official capacity; (7) Corrections Officer Northam in his official capacity only; (8) Classification Administrator Beth Gentry in her official capacity only; and (9) Dr. Logan, in her official capacity only. For the reasons set forth below, the Court finds that the complaint states potentially viable claims against defendant Michael Graulau in his individual capacity and against Dr. Logan in her official capacity; the claims against those defendants will be permitted to proceed. The complaint fails to state a claim for which relief may be granted under § 1983 against the remaining defendants; those claims will be dismissed prior to service on those defendants.

## I. Factual Allegations

Mr. Radley alleges generally that he was a pretrial detainee housed at the CJC from February through early April 2012. He was detained on a non-violent charge, but was housed with loud, violent federal and state inmates charged with serious crimes, where he was unable to sleep because of the noise, and where he was

in continuous fear for his life because of threats from gang members. He filed grievances and was told that the authorities were working on the problem. He repeatedly asked to be moved to a different housing unit upon receiving threats from other inmates, and was moved to a different pod or floor each time he voiced concerns about his safety. He alleges, however, that each time he was moved he was put back on a floor with violent offenders who threatened him and made him afraid for his life. He asserts that the practice of housing violent offenders with non-violent offenders violates his constitutional rights under the Eighth and Fourteenth Amendments.

Mr. Radley also alleges that in March 2012, he fell while trying to climb up to his top-bunk bed. In falling, he injured his back. He was instructed to fill out a form requesting a "sick call," but was refused care. Mr. Radley claims he was in severe pain and needed a bottom bunk after his fall; because he was denied medical care or a move to a lower bunk, he slept on the floor instead for some period of time. Mr. Radley asserts that jail officials were deliberately indifferent to his serious medical needs. Several weeks after his injury, Mr. Radley finally saw Dr. Logan and was referred for an x-ray. He asked Dr. Logan why it took so long to see him and was told that the medical department was understaffed. In addition to his complaints about the delay in treatment generally, Mr. Radley complains that he never received adequate care for his severe back pain and believes he has suffered some type of nerve damage. He also complains about not receiving any pain medication stronger than ibuprofen.

In addition, while still detained at the CJC, Mr. Radley at some point "broke down" and was placed on suicide watch as a result of the stress of being housed with violent offenders, the pain from his injuries, and the depression and frustration caused by his situation. He states that prior to his incarceration, he was a patient at Mental Health Cooperative and received counseling and medication for depression and bipolar disorder, but the CJC would not prescribe the medications he needed and was previously prescribed. He alleges that the CJC was deliberately indifferent to his serious mental health needs.

Mr. Radley was eventually moved to a segregation unit; classification officers stated they had no where else to move him because of his "incompatibles." In that pod, Mr. Radley was assaulted and injured by another inmate, Keith Moore, who was wearing metal handcuffs. Mr. Radley asserts that Corrections Officer Michael Graulau was at fault in this incident, because Officer Graulau violated prison policy by letting Mr. Moore out of his cell at the same time as the plaintiff even though he knew that Moore, who had a

significant history of violence, posed a serious risk of harm to the plaintiff. Officer Graulau did not allow Mr. Radley to file a police report or otherwise pursue claims against Mr. Moore, who admitted that he had assaulted Mr. Radley because he wanted to use the telephone. Mr. Radley claims Officer Graulau should have protected him from this inmate. Radley also complains that he was wrongfully written up for that incident when he was merely defending himself and the other inmate confessed to having attacked him. The plaintiff further claims that Officer Graulau violated his constitutional rights by preventing him from filing a police report., and that it violated his constitutional rights to have been kept in the same pod as Moore after the assault: "Just by him still being in the pod with me also after our incident . . . now [that we are] incompatibles. Why is he still or am I still in the pod with him . . . [T]his also should be . . . some type of constitutional v[io]lation." (ECF No. 1, at 27.)

In mid-April 2012, Mr. Radley was moved from the CJC to the Metro-Davidson County Detention Facility, operated by CCA. He claims this move was in retaliation for his wanting to file a police report and to pursue the claims stated in his present complaint.

The plaintiff seeks damages and injunctive relief to "change [the] policies" at the CJC and prevent other inmates from having to go through what he went through.

## II. Standard of Review

Although *pro se* pleadings are to be liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e)(2), *sua sponte*, without prior notice to the plaintiff or service of process on the defendant, if the complaint fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Further, the factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are

true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662,678 (2009) (citing *Twombly*, 550 U.S. at 555). A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, the court must construe the pleading in the light most favorable to the plaintiff. *Bishop v. Lucent Techs., Inc.,* 520 F.3d 516, 519 (6th Cir. 2008).

III.    **Law and Analysis**

To state a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *West v. Atkins*, 487 U.S. 42, 48 (1988).

A.    ***The Claims against Daron Hall, Dan Weikal, Jamie Johnson and Beth Gentry***

With respect to the individual-capacity claims against Sheriff Daron Hall, Warden Dan Weikal, and Chief of Staff Jamie Johnson, the plaintiff admits, in so many words, that these individuals had no personal involvement in the actions giving rise to the plaintiff's claims. (Compl. at 12.) The mere fact that these employees were in a supervisory position alone is not sufficient to subject them to personal liability under § 1983, because *respondeat superior* is not a proper basis for liability under § 1983. *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied*, 469 U.S. 845 (1984). Supervisory liability cannot be based solely on the right to control employees, *Bellamy*, 729 F.2d at 421, or "simple awareness of employees' misconduct," *Leary*, 349 F.3d at 903; *Bellamy*, 729 F.2d at 421. Moreover, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)). "At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Hays*, 668 F.2d at 874).

Here, the plaintiff appears to allege that the environment at the CJC was pervasively overcrowded and violent, and that the defendants deliberately ignored or approved the overcrowded conditions that gave

rise to an unreasonable risk of harm. Even accepting as true the plaintiff's allegations that the defendants knowingly acquiesced in and tacitly approved the housing conditions at CJC, the Court finds that the allegations do not state a § 1983 claim based on violation of the Eighth Amendment. To establish liability under the Eighth Amendment based on a failure to prevent harm to a prisoner, the plaintiff must prove that the defendants acted with "deliberate indifference" to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corrs.*, 69 F.3d 76, 78 (6th Cir. 1995). Deliberate indifference is a state of mind more blameworthy than negligence, but it entails "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Under the standard set by the Supreme Court, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see also LeMarbe v. Wisneski*, 266 F.3d 429, 435 (6th Cir. 2001). The mere fact that the CJC housed some violent prisoners or that violence among the inmates would sometimes occur does not establish an Eighth Amendment violation. *Woods v. Lecureux*, 110 F.3d 1215, 1225 (6th Cir. 1997); Gibson v. Foltz, 963 F.2d 851, 854 (6th Cir. 1992).

Moreover, although the plaintiff here alleges that the jail was overcrowded and that he was housed with violent offenders who threatened him and put him in constant fear for his life, he has not shown that he was actually injured or that prison officials failed to protect him from the threat of violence. To the contrary, except for the isolated attack by fellow inmate Keith Moore, discussed below, the plaintiff does not allege that he was subjected to violence by other inmates. Instead, he claims he was *threatened* with violence but, according to the plaintiff's own allegations, each time the plaintiff complained to prison authorities about a threat made by another inmate, he was promptly removed to a different floor or pod, away from the inmate(s) who threatened him. The plaintiff alleges that after subsequent reports of similar threats, he was eventually required to move back to floors or pods he had already been moved away from, but he does not show that he was actually harmed by any of these moves. He complains that he could have been moved to a non-violent ward or to the medical ward, but the fact that he was not moved to the location of his choosing does not mean that the defendants were deliberately indifferent to a substantial risk to his health or safety. The

Court therefore concludes that the plaintiff's allegations fall short of establishing that Hall, Weikal, Johnson or Gentry violated the Eighth Amendment's prohibition against cruel and unusual punishment, even assuming the plaintiff has adequately alleged personal involvement by any of these defendants.

Because the plaintiff does not allege facts showing that he was subjected to cruel and unusual punishment as a result of prison officials' acquiescence in or implicitly condoning a prison environment that posed an undue risk of serious harm to the plaintiff, the individual-capacity claims against these individuals are subject to dismissal.

The plaintiff also asserts official-capacity claims against these individuals and against Classification Administrator Beth Gentry (named only in her official capacity). A claim against an official in his official capacity is tantamount to a claim against the governmental agency that employs the individual—in this case, Metropolitan Nashville and Davidson County ("Metro"). *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Municipalities and other local government units, such as Metro, are "included among those persons to whom § 1983 applies," and therefore can be sued directly under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, a civil rights plaintiff suing a municipal entity under 42 U.S.C. § 1983 must show that his injury was caused by a municipal policy or custom. *Los Angeles Cnty., Cal. v. Humphries*,---- U.S. ---- 131 S. Ct. 447, 449 (2010)

Construed liberally, the Court finds that the complaint alleges the existence of jail-wide customs or policies that resulted in jail over-crowding, the housing of known violent offenders with non-violent offenders, and a failure to properly classify inmates based on their propensity for violence. Again, however, the plaintiff has failed to show that the alleged customs or policies resulted in a violation of his right under the Eighth Amendment to be free from cruel and unusual punishment. Generally speaking, the Supreme Court has held that overcrowding *per se* is not a violation of the Constitution. *Rhodes v. Chapman*, 452 U.S. 337, 347–48 (1981). While overcrowded conditions can be restrictive and even harsh, they do not violate the Eighth Amendment unless they deprive the inmate of the minimal civilized measure of life's necessities. *Id.* at 348; *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). To state a constitutional violation, a plaintiff must allege facts showing that he was denied basic human needs such as food, warmth, or sanitation, or was "otherwise subjected" to cruel and unusual punishment by virtue of the alleged overcrowded conditions to justify relief.

*Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Rhodes*, 452 U.S. at 348. The plaintiff has not made the requisite showing. The law is clear that "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 954.

Further, as set forth above, the fact that nonviolent offenders were housed with violent offenders and that violence sometimes occurred does not establish an Eighth Amendment violation. *See Woods*, 110 F.3d at 1225; *Gibson*, 963 F.2d at 854. The plaintiff alleges that he subjectively feared assault and lived under constant threats of violence, but he has not shown that the threats were carried out or that the customs and policies of the prison resulted in an undue risk of violence. Again, the plaintiff alleges that he was moved to a new location every time he reported that he had been threatened. The plaintiff's allegations tend to show, in fact, that there were prison policies in effect for dealing with the risks of inmate violence, principally by classifying prisoners based on their history of violence and by making attempts to keep inmates who had proven to be "incompatible" way from each other. Accordingly, even accepting as true the plaintiff's factual allegations and drawing all reasonable inferences in his favor, the Court finds that the plaintiff's allegations do not state a viable claim under the Eighth Amendment against the prison supervisory officials in their official capacity.

### B.    The Claims against the Davidson County Sheriff's Office

The Davidson County Sheriff's Office is not an entity capable of being sued. *See Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10-cv-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) (collecting Tennessee district court cases concluding that police departments and sheriff's offices are not proper parties to a § 1983 suit); *see also Pruitt v. Lewis*, No. 06–2867, 2007 WL 4293037, at *2 (W.D. Tenn. Dec. 6, 2007) ("It is well established that a '[county sheriff's] department is not a legal entity separate from its parent [county].' . . . [I]t is redundant to name a sheriff's department along with the parent county. . . ." (citations omitted; alterations in original)). Moreover, even if the Court were to construe the claims against the Davidson County Sheriff's Office as stated against Metro instead, the Court would be compelled to find that plaintiff's complaint fails to state a claim against Metro for the same reasons that it fails to state a viable official-capacity claim against Sheriff Daron Hall or the other CJC supervisory employees, as set forth above.

The claims against the Sheriff's Office will therefore be dismissed for failure to state a claim.

### C.    The Claims against Corrections Officer Michael Graulau

Mr. Radley alleges, with respect to Officer Graulau, that the plaintiff was housed on a maximum security unit at one point when he was violently assaulted by another inmate, Keith Moore. At the time the attack occurred, the plaintiff was only allowed out of his cell for limited periods during the day, typically by himself. He was having his "recreation" time and talking on the telephone when Moore, who was wearing metal handcuffs and ankle cuffs, violent assaulted Radley from behind, causing injuries to his face and arm. The plaintiff fought back to protect himself, and Officer Graulau was eventually able to separate them. The plaintiff asserts that this assault was the result of a mistake by defendant Graulau, who knew that Moore should not have been allowed to take recreation time at the same time as the plaintiff (or any other inmate) because of his security classification and documented history of violent attacks. The plaintiff also complains that Officer Graulau gave him a disciplinary write-up for the assault, even though Graulau knew that Moore had attacked the plaintiff and that the plaintiff was simply trying to protect himself. The disciplinary charge against the plaintiff was eventually dropped because the other inmate took responsibility for the attack, but the plaintiff claims Graulau was trying to avoid his own responsibility for the incident by also writing up the plaintiff.

In the prison context, the Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "Deliberate indifference of a constitutional magnitude may occur when prison guards fail to protect one inmate from an attack by another." *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990). "[D]eliberate indifference describes a state of mind more blameworthy than negligence," but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 834. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. Under this standard, Mr. Radley "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate," *id.* at 842, or that he was "especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Id.* at 843. Rather, "it is enough that the official acted or failed to act despite his knowledge of a substantial

risk of serious harm." *Id.* at 842.  In other words,

> [t]he question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health, and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.

*Id.* at 843 (quotation marks and internal citations omitted).

Accepting as true the plaintiff's allegations and drawing all inferences in his favor, the Court finds that the plaintiff has alleged facts sufficient to support a conclusion that Officer Graulau knew of a threat to Mr. Radley's safety caused by allowing Keith Moore out of his cell for recreation at the same time as the plaintiff and yet recklessly disregarded it, despite the availability of relatively effortless ways of addressing it, and that Officer Graulau's conduct "amounted to a conscious lack of concern." *Nelson v. Overberg*, 999 F.2d 162, 166 (6th Cir.1993).  Mr. Radley alleges that inmate Moore was classified as "admin max" and had a known propensity for violence, and that Officer Graulau knew that Moore should only have been allowed out for recreation by himself.  Radley was apparently the only other prisoner out of his cell at the same time Moore was let out on the day in question.

The Court expresses no opinion as to the merits of the claim, but will at this stage permit the individual-capacity claims against Officer Michael Graulau to proceed.  The official-capacity claims against him fail, however, because the plaintiff does not allege that Graulau's actions resulted from a custom or practice of the Sheriff's Department or Metro as a whole.  The official-capacity claim against him will therefore be dismissed.

### D.      The Claims against Corrections Officer Northam

Mr. Radley's claim against Officer Northam is based on a single alleged incident that did not result in an assault or any injury to the plaintiff.  Radley claims that a few days after he was assaulted by Moore, Officer Northam brought plaintiff out of his cell for "ruff reck" [sic].  (ECF No. 1, at 28.)  He was placed in a holding cell waiting area with a second inmate.  Both the inmates were in handcuffs and leg irons.  Officer Northam then also brought Moore out of his cell and placed him in the holding cell with Radley and the other inmate.  The plaintiff claims that this action put his "life right back at risk," but that Officer Northam immediately realized what he had done and removed Moore from the holding cell.  Mr. Radley claims that Officer Northam

thereby put his life at risk "on purpose or out of mistake." (*Id.*)

Because Officer Northam immediately realized his oversight and corrected the mistake before any harm occurred to plaintiff, the plaintiff fails to state a claim against Northam in either his individual or official capacity for violation of the plaintiff's constitutional rights under § 1983. The claim against Officer Northam will therefore be dismissed.

### E. The Claims against the "Medical Department of the Davidson County Sheriff's Department" and Dr. Logan

The "Medical Department of the Davidson County Sheriff's Office," like the Davidson County Sheriff's Office itself, is not an entity subject to suit. However, the entity with which the Davidson County Sheriff's Office contracts to provide medical services to inmates, Correct Care Solutions, is.[1] Moreover, the claims against Dr. Logan are asserted against her in her official capacity only, which is tantamount to asserting claims against the entity that employs her, presumably Correct Care Solutions. Correct Care Solutions is not named as a defendant in this action except implicitly, through the official-capacity claim against Dr. Logan. The question is whether the plaintiff states a viable claim against Dr. Logan in her official capacity based on his allegations of deliberate indifference to his serious medical needs in violation of the Eighth Amendment, arising from the fact that he put in numerous "sick calls" but was required to wait almost three weeks before receiving any medical attention for an alleged serious injury incurred when he fell from an upper bunk and hit his back. In addition, Mr. Radley asserts that he received no psychiatric treatment or medication despite pre-incarceration diagnoses of mental disorders for which he was prescribed medication, and despite spending twenty-four hours on suicide watch after a "break down" suffered at some point while he was housed at the CJC. The plaintiff alleges that he asked Dr. Logan why it took so long to see him, and she responded that it was because "they" were short of staff. (ECF No. 1, at 12.)

To establish a violation of his constitutional rights resulting from a denial of adequate medical care, the plaintiff must show that the defendant was deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). An Eighth

---

[1] The Court takes judicial notice of the Sheriff's Department website posting in which it states that inmate medical services are provided by contract through Correct Care Solutions. *See* http://www.nashville-sheriff.net/2011/06/14/criminal-justice-center-overview/ accessed July 25, 2012 at 4:06 p.m.

Amendment claim of denial of adequate medical care has both an objective and subjective component. The objective component requires that the plaintiff's medical needs be sufficiently serious. *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992) (citing *Rhodes v. Chapman*, 452 U.S. 337 (1981)). The subjective component requires that the defendants act with deliberate indifference to the plaintiff's medical needs. *Hunt*, 974 F.2d at 735. That is, the subjective component of an Eighth Amendment claim requires a culpable state of mind on the part of a defendant. "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

As indicated above, "deliberate indifference" is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice. *Farmer v. Brennan*, 511 U.S. 825, 835–36 (1994); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc). Deliberate indifference may be "manifested by prison doctors in their response to a prisoner's needs or by prison [staff] in *intentionally denying or delaying access to medical care* or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104 (emphasis added). A prisoner states the proper Eighth Amendment component of the culpable state of mind "when he alleges that prison authorities have denied reasonable requests for treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976); *see also Sanderfer v. Nichols*, 62 F.3d 151, 155 (6th Cir. 1995); *Boretti v. Wiscomb*, 930 F.2d 1150, 1154–55 (6th Cir. 1991); *Byrd v. Wilson*, 701 F.2d 592, 595 (6th Cir. 1983) (per curiam).

Here, the Court will presume that the plaintiff's back injury resulting from his fall from a top bunk constitutes a "serious medical need" for purposes of the Eighth Amendment, and that his mental health disorder also constituted a serious medical need. Accepting as true the plaintiff's allegations, the Court finds that a failure by the prison personnel or the prison medical facility to provide the plaintiff with any type of medical attention or treatment for nearly three weeks, despite the plaintiff's submission of repeated "sick call" requests, implies the existence of a custom or policy of ignoring prisoner needs for an unreasonably long time, which gives rise to a permissible inference of deliberate indifference on the part of the entity that employs Dr.

Logan.  Dr. Logan allegedly told the plaintiff that the delay was caused by a staffing shortage.  The Court finds that the plaintiff's allegations, which are presumed to be true at this stage, support an inference that the medical facility knew that it was understaffed and failed to rectify the situation, thereby deliberately delaying treatment in the face of a known risk that serious medical problems, including plaintiff's, would go untreated for an unacceptably long time.

The Court expresses no opinion as to whether Mr. Radley ultimately may be unable to prove his claim, but for now the official-capacity claim against Dr. Logan will be permitted to proceed.  Because the "Medical Department of the Davidson County Sheriff's Office" is not an entity subject to suit, the claims against it must be dismissed.

### F.      Retaliatory Transfer

The plaintiff speculates that his transfer to the Metro-Davidson County Detention Facility was in retaliation for his having filed various grievances.  While the filing of prison grievances qualifies as activity protected by the First Amendment, the plaintiff fails to allege or show that his transfer was an "adverse action" of the type that would deter a person of ordinary firmness from continuing to engage in protected conduct.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  This is particularly true in light of the fact that the plaintiff also states he repeatedly requested to be transferred out of the CJC.[2]  Even if the transfer could be considered an adverse action, Mr. Radley points to no evidence from which an inference could be made that the transfer was motivated even in part by the plaintiff's protected conduct.  The plaintiff fails to state a claim under § 1983 for retaliatory transfer.

### IV.    Conclusion

For the reasons set forth herein, the Court will permit the claims against defendants Michael Graulau, in his individual capacity, and Dr. Logan, in her official capacity, to proceed, and will direct service upon those defendants.  The claims against the remaining defendants will be dismissed for failure to state a claim upon which relief may be granted.

---

[2]  It is well-established that a prisoner has no inherent constitutional right to be housed in a particular correctional facility.  *Olim v. Wakinekona*, 461 U.S. 238, 244–46 (1983); *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995).

An appropriate order will enter.

Todd Campbell
United States District Judge